UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DANIEL McCRAY, : | |
|     Plaintiff, : | |
| : | |
| v.  : | CASE NO. 3:16-cv-1923 (SRU) |
| : | |
| RYAN MALANSON, et al., : | |
|     Defendants. : | |
| : | |

**INITIAL REVIEW ORDER**

Plaintiff Daniel McCray, currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 alleging that the defendants used excessive force against him. McCray names as defendants Correctional Officers Ryan Malanson, Van Nostrand, Thompson, Mclain, Joyal, Cheney and Bertrand; Lieutenant Rivera; Deputy Warden Mudano; and Captain Scott Salious. The complaint was filed on November 22, 2016. McCray's motion to proceed *in forma pauperis* was granted on November 28, 2016.

Under section 1915(e)(2)(B) of title 28 of the United States Code, the Court must review civil complaints filed *in forma pauperis* and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a

plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.  Allegations

On July 7, 2016, Malanson escorted McCray's cellmate back to the cell after a phone call. He told McCray to get on his bunk, but did not handcuff him. Malanson then opened the cell door to admit the cellmate. After Malanson secured McCray's cellmate in the cell, McCray began assaulting his cellmate by punching him in the head. Defendant Malanson called a Code Blue.

After the code was called, correctional officers and other staff members came to the housing unit. McCray was still assaulting his cellmate. Defendant Rivera ordered McCray to stop fighting and then ordered the cell door opened. When the door was opened, McCray immediately stopped assaulting his cellmate and lay on his stomach on his bunk. Defendants Bertrand, Van Nostrand, Thompson, Mclain, Malanson, and Cheney ran into the cell. Defendant Bertrand threw McCray from the bunk to the floor. When McCray was secured, defendants Van Nostrand, Cheney, Bertrand, Malanson, and Mclain began kicking McCray in the head and back, punching him in the face and bouncing his head on the floor.

2

When the camera arrived, McCray was secured in handcuffs and chains and escorted to the medical unit. Staff cleaned McCray's face, which was bleeding, and photographed his injuries. The correctional officers then escorted him to restrictive housing. About thirty minutes later, McCray was taken to the MacDougall building of the MacDougall-Walker Correctional Institution for treatment of his head injury and to determine whether he had a concussion. He remained there for five days. After he was cleared by the medical unit, McCray was returned to the Walker building.

On July 12, 2016, while in restrictive housing, McCray spoke to Salious, the restrictive housing unit manager. McCray questioned the use of excessive force by correctional staff when he was not resisting. Salious told McCray that he was beaten because he was "always talking shit to them" and that Mclain had participated in the incident because in November 2015, McCray and his cellmate threw a food tray at Mclain. Salious cautioned McCray to "keep your mouth shut and no more hitting my staff with food trays." ECF No. 1 at 10.

II.   Analysis

The use of excessive force against a prisoner can constitute cruel and unusual punishment even where the inmate does not suffer serious injuries. *See Hudson v. McMillian*, 502 U.S. 1, 4 (1992), *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (per curiam). The "core judicial inquiry" is "not whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7 (internal quotation marks omitted)).

McCray alleges that when the force was used he was on his bunk and not resisting any

3

officer. Thus, there appeared no need to use force to restore discipline. In addition, the alleged comment by Salious suggests that the force was used maliciously. Accordingly, the excessive force claim will proceed.

McCray also includes as defendants Deputy Warden Mudano and Captain Salious, both supervisory officials. Mudano responded to McCray's grievance, stating that staff responded in accordance with all policies and procedures. He did not address the allegation that McCray was not resisting when force was used against him. Salious told McCray that he was assaulted for his actions toward correctional staff and warned him to alter his behavior. Neither defendant directly participated in the assault, and McCray's allegations are not sufficient to allow their actions to be construed as sanctioning the allegedly abusive conduct. The court thus considers McCray's allegations against Salious and Mudano to be insufficient to support a claim for supervisory liability.

The only reference to Correctional Officer Joyal in the complaint is that he delivered a disciplinary report for assault to McCray. Because that action did not violate any constitutionally protected right, all claims against Joyal are dismissed.

III.     Motion for Appointment of Counsel

McCray seeks appointment of *pro bono* counsel in this action pursuant to 28 U.S.C. § 1915. The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. *See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit also has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Saviano v. Local 32B-32J,* 75 F. App'x 58,

4

59 (2d Cir. 2003) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989)).

McCray states that he has contacted only one law firm seeking representation. He does not indicate that he contacted any other law firms or Inmates' Legal Aid Program, the entity under contract to provide legal assistance to Connecticut inmates. Absent a denial of representation by other law firms and a denial of assistance by Inmates' Legal Aid Program or a showing that the assistance available is insufficient at this stage of litigation, McCray cannot demonstrate that he is unable to obtain legal assistance on his own.  Thus, McCray's motion for appointment of counsel is denied without prejudice as premature.

IV.     Conclusion

All claims against Joyal are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). The supervisor liability claims against Salious and Mudano are also DISMISSED without prejudice to repleading. The case will proceed on the excessive force claim against Malanson, Rivera, Van Nostrand, Thompson, Mclain, Cheney and Bertrand.

It is hereby ordered that:

(1)     **The Clerk shall** verify the current work addresses for each remaining defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is, or becomes, incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new

address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)     McCray shall utilize the Prisoner Efiling Program when filing documents in this case.

(10)    McCray's motion for appointment of counsel [**ECF No. 6**] is **DENIED** without prejudice as premature.

**SO ORDERED** this 6th day of December 2016 at Bridgeport, Connecticut.

                                                        /s/ Stefan R. Underhill
                                                        Stefan R. Underhill
                                                        United States District Judge